**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LORI ANN SALAZAR,

        Plaintiff,

v.                                                                               No. CIV 02-878 BB/RLP

JOHN ASHCROFT, Attorney General of the
United States,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

       THIS MATTER comes before the Court for consideration of Defendants' motion to dismiss or, in the alternative, for summary judgment (Doc. 7). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the motion will be granted in part and denied in part.

       Plaintiff was employed by the United States Government, in the office of the United States Attorney for the District of New Mexico. Beginning in March 2000, Plaintiff filed several equal employment opportunity ("EEO") complaints. These complaints were investigated by the administrative agency responsible for performing such investigations. Prior to, during, and following the completion of these investigations, Defendant took actions against Plaintiff in several ways, which according to Plaintiff constituted harassment, creation of a hostile work environment, and retaliation. Plaintiff ultimately resigned, claimed she was constructively discharged, and filed this lawsuit. In the original complaint Plaintiff brought causes of action under Title VII, 42 U.S.C. § 2000e-5, *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Family and Medical

Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and a retaliation or reprisal claim incorporating the above statutes. Rather than file an answer to the complaint, Defendant filed the instant motion to dismiss. Plaintiff then filed an amended complaint as well as a response to the motion.

Defendant's original arguments in the motion to dismiss included the following: (1) the ADA does not apply to federal employees such as Plaintiff, and her claims based on disability must be brought under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*; (2) similarly, the FMLA does not apply to federal employees; (3) Plaintiff failed to administratively exhaust her Title VII claims, and the alleged facts underlying those claims do not state a Title VII claim in any event; (4) since Plaintiff's retaliation claim is based on supposed violations of the above statutes, which are inapplicable to this case or were not exhausted, the retaliation claim must fail; (5) a performance evaluation rating Plaintiff as meeting or exceeding standards does not qualify as an adverse employment action; and (5) punitive damages are not available to federal employees alleging employment discrimination. Plaintiff's response to the motion admits that the ADA does not apply to Plaintiff, and points out that the First Amended Complaint has changed the claim to one under the Rehabilitation Act. Plaintiff also concedes that the FMLA does not apply, and the amended complaint has deleted reliance on that statute. Also, Plaintiff has deleted the claim for punitive damages, acknowledging that she could not recover them in this action.

At this point, therefore, the claims remaining in the case are one count alleging violation of the Rehabilitation Act, which Defendant is not at this point contesting; Plaintiff's Title VII claims; and Plaintiff's retaliation claim. This opinion concerns only the Title VII and retaliation claims.

**Standard to be Applied:** Ordinarily, in addressing a motion to dismiss on the pleadings, this Court considers only the allegations of the complaint, accepting them as true for purposes of the

2

motion. *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1266 (10th Cir. 1989). The Court need not accept conclusory allegations as true, although a party's intent may be alleged generally. *Phelps*, 886 F.2d at 1269-70; *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989). This Court will dismiss the complaint, or claims contained in the complaint, only if it appears that Plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Phelps*, 886 F.2d at 1266. As to a portion of Defendant's motion to dismiss in this case, a somewhat different method of review applies, because part of the motion is based on lack of jurisdiction arising out of an asserted failure to exhaust administrative remedies. This means that part of the motion to dismiss is based on Rule 12(b)(1) rather than Rule 12(b)(6), F.R.C.P., which in turn means that matters outside the pleadings may be considered by the Court in deciding the motion. *See Inlandboatmens Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir. 2002); *see also Zinke v. Slater*, 34 Fed.Appx. 667, 672, n.5 (10th Cir. 2002) (unpublished) (federal defendant's motion to dismiss not converted to motion for summary judgment, but deemed a Rule 12(b)(1) motion, where administrative record was examined by district court to determine whether federal employee had exhausted her administrative remedies). The Court will decide Defendants' motion in light of these standards.

**Title VII Claims--Exhaustion of Remedies:** Plaintiff's Title VII claims are based on the following allegations in her amended complaint: (1) while Plaintiff was in her seventh month of pregnancy, at age 35, she was required to lift heavy boxes and carry heavy mail bags several blocks to a courthouse, a task that was not in her job description; (2) as a result, she seriously injured her back; (3) subsequently, Plaintiff's 13-year-old son was diagnosed with leukemia, causing Plaintiff to need time off from work; (4) Plaintiff requested accommodation to care for her son, but was not

granted sufficient accommodation; (5) Plaintiff applied for a promotion but was not selected for the position even though she was better qualified than the selectee, and Plaintiff was told that one of the reasons she was not selected was her son's illness; (6) by imposing unreasonable and unsafe working environments on her, Defendant violated the Pregnancy Act and created a hostile work environment on the basis of her pregnancy; and (7) by failing to promote Plaintiff and failing to accommodate her need to care for her son, Defendant discriminated against Plaintiff on the basis of her parental status and her gender, due to the disparate impact on women created by any parental-status discrimination.

Defendant's exhaustion argument, in summary form, is that Title VII, for purposes of this case, protects only against gender discrimination or differential treatment of a pregnant woman, and Plaintiff never mentioned either type of discrimination during the entire administrative process. Instead, Plaintiff's only references to her pregnancy concerned the physical problems caused by that pregnancy and Defendant's refusal to accommodate Plaintiff's physical problems. Therefore, the only claims accepted for investigation during the administrative process, and actually investigated, were claims involving Plaintiff's alleged physical disability, rather than any gender-discrimination or differential-treatment claim cognizable under Title VII. After review of the portions of the administrative record attached to the parties' briefs, the Court agrees that Plaintiff failed to exhaust any Title VII claim during the administrative process.

The purposes of requiring Title VII claimants to exhaust their administrative remedies are twofold: to give notice of the alleged violation to the charged party and to give the EEOC an opportunity to conciliate the claim. *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994). The Court must therefore examine the materials submitted by the parties to determine whether Plaintiff gave adequate notice to Defendant and the EEOC that she was attempting to assert claims of gender

4

discrimination, differential treatment due to pregnancy, or disparate impact, in addition to the disability-based claim she clearly did raise. Plaintiff filed an initial informal EEO claim, alleging discrimination due to her physical disability. On this form, she checked boxes for "Disability" and "Physical" and "Reprisal." (Exh. 1, MSJ) The EEO counseling report prepared in response to the informal complaint addressed Plaintiff's allegations of "a physical injury she sustained at work." (Exh. 2, MSJ) Subsequently Plaintiff filed a formal complaint of discrimination, stating that she had "been discriminated against during this pregnancy and discriminated and retaliated against for my physical disability..." (Exh. 3, MSJ) The EEO statement of issues accepted for investigation, responding to the formal complaint, stated that the issue accepted was whether management officials discriminated against Plaintiff "based upon her disability (physical)..." (Exh. 4, MSJ) Nothing in the record indicates Plaintiff attempted to correct this statement of issues by adding gender discrimination, differential treatment, or disparate impact as an issue.

Plaintiff later filed a new complaint of discrimination, arising out of the denial of a promotion. The narrative portion of this new complaint asserts Plaintiff was denied the promotion by the person "against whom I have filed an EEO complaint of discrimination based on disability (pregnancy-related injury)." (Exh. 5, MSJ) This narrative portion also states that Plaintiff's supervisors indicated to Plaintiff that they took into consideration her son's illness and their consequent desire not to overwhelm her with duties or responsibilities. (*Id.*) Again, nothing in the narrative portion mentions gender as an issue, differential treatment of women as opposed to men, differential treatment of or disparate impact upon a pregnant woman, or anything that might be understood as a complaint that Plaintiff was being treated differently than a man or a non-pregnant woman would have been treated in the same situation. Again, the statement of issues accepted for consideration by the EEO, in

5

response to this new complaint, mentions only "disability (physical)" as the basis for Plaintiff's claims, and again Plaintiff apparently made no effort to correct this characterization of her claims.

During the EEO investigation of Plaintiff's claims, she made the following statements during her sworn testimony: (1) her pregnancy was a disability, and led to her back injury when she was forced to carry heavy loads of mail (Exh. B, Pltf. Resp., p. 7); (2) the alleged harassment she suffered resulted directly from her disability, and Defendant harassed her by pressuring her to carry heavy loads of material when she was pregnant (*Id.*, p. 50); and (3) Defendant discriminated against her "under the Americans with Disabilities Act because of my pregnancy" (*Id.*, p. 59). The final decision issued in Plaintiff's administrative proceedings describes Plaintiff's complaint as claiming she had been "discriminated against and subjected to a hostile work environment because of her physical disability (pregnancy and back injury) ..." (Exh. 9, MSJ).

It is apparent that Plaintiff's pregnancy was never the subject of a gender-based discrimination claim, or a claim of differential treatment or disparate impact, during the administrative process. The starting point for analysis is Plaintiff's consistent failure to ever check the "Sex" box as the basis for her discrimination claims, on the EEOC complaint forms. (Exh. 1, 5, MSJ) While such failure to mark the gender discrimination box is not dispositive of the exhaustion issue, it "certainly creates a presumption that she was not asserting claims represented by boxes not checked." *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir. 1998). This presumption must be rebutted by evidence in the record tending to show that a claim of gender discrimination actually was raised during the administrative proceedings. However, as discussed below, no such evidence appears in the record submitted to the Court.

Whenever the topic of pregnancy was discussed in the record, it was in connection with pregnancy as a disability, Defendant's refusal to accommodate Plaintiff's pregnancy, and the resultant back injury suffered by Plaintiff. Only the physical aspects of the pregnancy were at issue at all during the administrative proceedings. Plaintiff never mentioned that she thought she was being treated differently than a similarly situated male or non-pregnant employee. As to the denial of the promotion, Plaintiff never stated that there was a policy or practice of treating women who had ill family members differently than men who had ill family members. She also never alleged that Defendant had a policy concerning employees who became caretakers for family members, or that such a policy affected women more often than men. The entire focus of Plaintiff's administrative claims was that she had been harassed, injured, and ultimately constructively discharged as a result of Defendant's refusals to accommodate her physical disabilities, including both her pregnancy and the work-related back injury caused by Defendant's failure to accommodate her pregnancy. A reasonable employer would not have understood that Plaintiff was attempting to raise an issue of gender discrimination, or differential treatment due to pregnancy. Instead, a reasonable employer would have understood that Plaintiff was attempting to raise a claim of failure to accommodate the physical problems caused by Plaintiff's pregnancy, as well as the resulting injury. The EEO office did not in fact understand that Plaintiff was attempting to raise a gender-bias or pregnancy-bias claim, and Plaintiff did not try to correct the EEO office's understanding. *See Schroder v. Runyon*, 1998 WL 694518 (10th Cir.) (unpublished) (employee's silence in response to letter outlining scope of proposed EEO investigation is convincing evidence she did not intend to pursue alleged acts of gender-based discrimination).

Furthermore, a claim based on physical disability is not so similar to a gender-discrimination claim or a pregnancy-discrimination claim as to be encompassed by the same EEOC complaint or proceedings. *See Schroder v. Runyon*, 1 F.Supp.2d. 1272, 1275 (D.Kan.1998) (disability discrimination is "fundamentally different" from gender discrimination); *Corbin v. Runyon*, 1999 WL 590749, fn. 5 (10th Cir.) (unpublished) (disability discrimination and gender-based discrimination are not "like or reasonably related" forms of discrimination, for purposed of exhaustion-of-remedies requirement); *Aleman v. Sharp*, 1998 WL 480154 (10th Cir.) (unpublished) (disability claim not reasonably related to gender and pregnancy discrimination claims). Exhaustion of the disability claim, therefore, does not satisfy the exhaustion requirement for purposes of the gender bias or pregnancy bias claims.

It should be noted that the mere fact that Plaintiff stated she was discriminated against due to her pregnancy is not sufficient to exhaust a claim under Title VII's pregnancy-discrimination provision, the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PDA"). Plaintiff's only claim regarding her pregnancy was that she was forced to carry heavy loads of mail while she was pregnant--in other words, Defendant did not sufficiently accommodate her physical limitations arising out of pregnancy. The PDA, however, is not a pregnancy accommodation statute, and does not require employers to provide light duty to pregnant employees. Instead, the PDA protects against differential treatment of pregnant employees, and requires that such employees be treated exactly the same as non-pregnant employees. *See, e.g., Lang v. Star Herald*, 107 F.3d 1308, 1312 (8th Cir. 1997); *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996) (PDA does not require that employers make accommodations for their pregnant workers); Barbara Lindeman, Phillip J. Pfeiffer, *Employment Discrimination Law*, p. 272 (2000 Supp.). Since Plaintiff never claimed that she was treated

differently than any non-pregnant employee, she failed to exhaust a PDA claim cognizable under Title VII.

**Title VII--Failure to State a Claim:** In addition to the failure to exhaust the Title VII claims during the administrative process, those claims will be dismissed because the amended complaint does not state a viable Title VII claim. As pointed out above, the claims Plaintiff attempts to assert are that Defendant violated the PDA by failing to accommodate her pregnancy, and violated Title VII as a whole, by failing to promote her due to her status as a woman with a seriously ill child and by failing to accommodate her need to care for her son. None of these claims, however, is viable as alleged in the amended complaint, for the reasons discussed below.

**PDA:** Plaintiff has not alleged she was treated differently than a non-pregnant person when she was required to carry the heavy load of mail to the courthouse. She has not alleged that any man or non-pregnant woman ever asked to be relieved from such duties, for any reason. She has also not alleged that Defendant had a policy or practice regarding the courthouse run that would have a disparate impact on pregnant women. Her only complaint is that Defendant did not accommodate the physical limitations arising out of her pregnancy, by excusing her from the courthouse run. In essence, therefore, Plaintiff's complaint seeks recovery under the PDA because Plaintiff, as a pregnant woman, was not accorded preferential treatment. As discussed above, however, the PDA does not require an employer to accommodate an employee's pregnancy, and does not require an employer to make special efforts on behalf of pregnant employees. *Urbano v. Continental Airlines, Inc.,* 138 F.3d 104, 206 (5th Cir. 1998) (light duty accommodation not required by PDA)*; see also E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 (10th Cir. 2000) ("[n]othing in the PDA

requires an employer to give preferential treatment to pregnant employees..."). Plaintiff's amended complaint therefore fails to state a claim under the PDA.

**Title VII--Disparate Treatment:** Plaintiff's next claim is that Defendant discriminated against her, as a woman with a seriously ill child, by refusing to promote her at least in part because of her perceived need to be a caretaker for that child. As Plaintiff discusses, this discrimination claim is based on the "gender plus" theory of discrimination. Under the gender-plus theory, a violation of Title VII occurs if gender discrimination is applied to a subset of women who share a certain characteristic other than their gender, such as being married, or being single, or being parents. *See Coleman v. B-G Maintenance Management*, 108 F.3d 1199, 1203 (10th Cir. 1997) *cf. Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490-91 (10th Cir. 1997) (analyzing gender-plus case without mentioning that term). The difficulty for Plaintiff, under this theory, is that the discrimination must still be based on gender, not on the "plus" factor. Put another way, the gender plus theory protects the gender characteristic of the plaintiff, not the plus characteristic. *Coleman.* In this case, to state a cause of action under the gender-plus theory, Plaintiff was required to allege that she, as a woman having the status of parent of a seriously ill child, was treated differently than a man who had a seriously ill child. *Id.,* 108 F.3d at 1203-04. The amended complaint contains no such allegation. Instead, the amended complaint asserts that Plaintiff suffered adverse employment actions because of her son's illness, and that such treatment may not be based on her parental status. In essence, by omitting any allegation of differential treatment on the basis of gender, the amended complaint maintains that Title VII protects Plaintiff's status as a parent. Title VII does not do so. *See Costa v. Desert Palace, Inc.,* 268 F.3d 882, 888 (9th Cir. 2001); *cf. Piantanida v. Wyman Center, Inc.*, 116 F3d 340 (8th Cir1997) (PDA does not protect status as "new mom"); *Coleman*,

108 F.3d at 1204 (Title VII does not protect marital status alone); *Fisher v. Vassar College*, 70 F.3d 1420, 1446-48 (2d Cir. 1995) (married women who took long periods of leave to raise children failed to show they were treated less favorably than men taking extended leave, and thus failed to establish Title VII claim). Plaintiff's failure to allege that she was treated differently than a man with a seriously ill child means that she failed to state a claim for disparate treatment under Title VII. *See O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F.Supp.2d 868, 886 (S.D.Ohio 1998) (female plaintiff who took parental leave failed to establish Title VII violation because failed to offer evidence that she was treated differently than male employees who took parental leave). In sum, even if Defendant did deny Plaintiff the promotion solely because she had parental responsibilities toward her son, no violation of Title VII occurred, absent an allegation that men with similar parental responsibilities were not denied promotions.

**Title VII--Disparate Impact:** Plaintiff's disparate impact claim is based on her assertion that women, more often than men, act as caretakers for seriously ill children, and that Defendant's actions therefore have a disparate impact on women. This argument fails because Plaintiff has not alleged that Defendant had a policy or practice of denying promotions to employees who had seriously ill family members. Instead, she has alleged only one instance of a denial of promotion--the one that happened to her. To state a prima facie case of disparate impact discrimination, however, Plaintiff was required to allege the existence of a "specific identifiable employment practice or policy" that "caused a significant disparate impact on a protected group." *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1242 (10th Cir. 1991). The disparate impact theory is applicable where a facially neutral employment practice or policy results in a disparate impact on women, or minorities, or another protected group. *Id.* That theory does not apply, however, where (as here) the only allegation is that

11

Defendant took a specified action only once, and did not act pursuant to an identified practice, policy, or procedure. *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1156-57 (7th Cir. 1997). For this reason, Plaintiff has failed to adequately allege a Title VII disparate-impact claim.

**Retaliation Claim:** Defendant's first brief raised two arguments with respect to the retaliation claim: (1) Since none of Plaintiff's claims implicate the ADA, the FMLA, or Title VII, she has not stated a retaliation claim under those statutes; and (2) the "negative" performance evaluation she received, and which she maintains is one act of retaliation, does not qualify as an adverse employment action that may be the basis of a retaliation claim. As noted above, Plaintiff has amended her complaint to substitute a Rehabilitation Act claim for the ADA claim. Claims of retaliation are actionable under the Rehabilitation Act, just as they are under Title VII or the ADA. *See Gibcheck v. Runyon,* 245 F.3d 547, 550 (6th Cir. 2001); *Joelson v. Dep't of Veterans Affairs*, 177 F.Supp.2d 967, 972 (D.N.D. 2001). Since Plaintiff exhausted her administrative remedies with respect to her retaliation claim, this claim will not be dismissed.

Defendant also wishes to have the performance-evaluation issue removed from consideration in this lawsuit, arguing that a meets-to-exceeds-standards evaluation is not actionable as a matter of law. The Court would tend to agree that, standing alone, such an evaluation does not constitute an adverse employment action. However, Plaintiff has alleged that the evaluation, including certain untrue aspects of the evaluation, was part of a hostile work environment imposed upon her in retaliation for her EEO complaints. It is true that there is room for substantial doubt as to whether the allegations made in support of the hostile-work-environment theory are sufficient to allow such a claim to proceed, as the allegations are lacking both as to the quantity of hostile acts and the seriousness of most of those acts. At this point, however, the issue of the adequacy of the pleadings

12

to state a hostile-environment claim is not before the Court. The Court will therefore allow the evaluation to remain an issue in this case, as part of the retaliation claim based on the alleged imposition of a hostile work environment.

In the reply brief, Defendant made an argument concerning the timing of retaliatory acts. Defendant maintained that only those acts occurring within 45 days of the date Plaintiff filed an EEO claim, or an amendment to her claim, may be considered in this case. Since Defendant did not make this argument until the reply-brief stage, Plaintiff has not had an opportunity to brief the issue and the Court will not consider it. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir.2000) (arguments raised for the first time in a reply brief need not be addressed). Furthermore, Defendant did not identify which alleged acts of retaliation might be affected by this argument, and the Court sees no reason to try to perform such an analysis without the benefit of input from the parties.

**Conclusion:** Based on the foregoing, the Court will grant the motion to dismiss insofar as it concerns the Title VII claims. The Rehabilitation Act claim and the retaliation claim will remain in the case.

### ORDER

A memorandum opinion having been entered in this case, it is hereby ORDERED that Defendant's motion to dismiss or, in the alternative, for summary judgment (Doc. 7) be, and hereby is, GRANTED in part and DENIED in part.

Dated this 28th day of February, 2003.

*[signature]*
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Hannah B. Best

**For Defendant**:
Susan B. Biggs